UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

         Plaintiff,

v.

DENISE POPE, CDP TAX SERVICES, INC.,
JANISE JONES, and CDP ACCOUNTING
SERVICES, P.C.,

         Defendants.
_____/

Case Number 15-11224
Honorable David M. Lawson

## OPINION AND ORDER GRANTING GOVERNMENT'S
## MOTION FOR SUMMARY JUDGMENT

The government has sued the defendants, who are engaged in the business of preparing income tax returns for individuals, seeking a permanent injunction forbidding them from ever engaging in that activity. The government contends that the defendants have filed numerous fraudulent returns that claimed false deductions and understated the amount of tax due. The Court previously entered a preliminary injunction barring the defendants from preparing and filing tax returns on behalf of others while this case is pending. Discovery has closed, and the case is scheduled for trial. The government now has filed a motion for summary judgment, offering declarations and documentary evidence that establishes the elements of its claims. The defendants' response does not raise a material fact question, primarily because they asserted their rights under the Fifth Amendment and refused to respond to any substantive discovery by the government about their conduct or to furnish any affidavits or declarations in response to the motion. Because the undisputed facts show that the government is entitled to the relief it requests as a matter of law, the Court will grant the government's motion and enter final judgment in the case.

## I.

The Internal Revenue Service initiated an investigation of the defendants' tax preparation service in 2011. IRS Revenue Agent Yolanda Churchwell stated in a declaration that defendant Denise Pope operated a tax preparation business using various business names since approximately 2006. Pope's businesses — known as Uneek Business Solutions, CDP Accounting Services PC, and CDP Tax Services, Inc. — prepared at least 2,770 1040 returns for tax years 2009, 2010, 2011, and 2012. Based on the results of its investigation of Pope and her partner, Janise Jones, the IRS revoked the electronic filing identification numbers (EFIN) for Uneek Business Solutions and CDP Accounting, Inc. However, Churchwell averred that Pope and Jones then began filing tax returns under a different EFIN assigned to CDP Tax Services, Inc.

Churchwell says that the IRS examined 87 returns prepared by Pope, Jones, or other employees of Pope's tax preparation businesses between 2008 and 2012, and all but two of them stated false claims. The IRS calculated the total tax deficiency for those 85 returns at $461,463.63. She identified a pattern that emerged from the 87 returns examined. False or unsubstantiated charitable contributions were reported on 31 of the returns ("often using the exact same false amounts for contributions — $6,000 in cash contributions and $5,000 per non-cash donation"); 28 returns reported false or non-qualifying unreimbursed employee business expenses; and 25 returns claimed false Schedule C expenses. The IRS determined that in many cases where Schedule C expenses were claimed to offset income, the taxpayer clients did not own or operate any business, and deductions were taken for costs that are not valid business expenses, such as ordinary costs of commuting to and from work. Some of the returns also used false or inflated business expenses to offset income in order to claim the Earned Income Tax Credit, and other returns claimed refundable

tax credits for education expenses, where the taxpayers never attended college and had no educational expenses during the tax year.

The government included with its motion a representative sample of declarations from nine taxpayer clients of the defendants. Jason Poindexter attested that he hired CDP Accounting Services to prepare his 2010 and 2011 returns, and that Denise Pope prepared those returns for him. Mot. Summ. J., Ex. B, Decl. of Jason Poindexter ¶ 2-3 (Pg ID 327). Poindexter provided Pope with W-2 forms from his employment at Greektown Casino and his mortgage interest statements, but he did not furnish any other financial information to Jones for use in preparing his returns. *Id.* ¶¶ 1, 4. Poindexter received a refund on both of his 2010 and 2011 tax returns, but he did not review his tax forms until he was contacted by the IRS regarding the statements made on them. *Id.* ¶¶ 5-6. Poindexter subsequently learned that his returns for both years included Schedule C forms claiming business expenses of $16,495 for 2010 and $8,307 for 2011, but he never provided documents to Pope to substantiate any such expenses, and he never told Pope that he owned or operated any business. *Id.* ¶¶ 7-9. Poindexter also attested that his returns for both years claimed education credits of $4,000 and reported cash charitable donations of $6,000, but he never told Pope that he had any education expenses or made any charitable donations for either of those years. *Id.* ¶¶ 10-11.

To Phuovone attested that his tax returns for 2010, 2011, and 2012 were prepared for him by defendant Pope (2010) and defendant Jones (2011 and 2012). Ex. C, Decl. of To Phuovone ¶¶ 2-3 (Pg ID 330). Phuovone received a refund for each of those tax years, but he did not review his tax forms before he signed them. *Id.* ¶¶ 5-6. Phuovone later learned that his 2010 return claimed education expenses of $5,000 for him and his wife, but he never told Pope that he or his wife paid any education expenses for that year; he told Pope only that he takes two or three classes a year

required by his employer, and his employer reimbursed all of the expenses for them. *Id.* ¶ 7. Phuovone did not give Pope any information to substantiate any amount of education expenses for 2010. *Ibid.* Phuovone's returns stated that he made cash charitable donations of $8,400 in 2010, $12,000 in 2011, and $13,700 in 2012, but Phuovone never told Pope or Jones that he made any such donations and never provided them with any information to substantiate those amounts. *Id.* ¶ 8. Phuovone's 2011 return also reported non-cash charitable contributions that added up to $15,000, but Phuovone never told Jones that he made donations valued at that amount. Phuovone told Jones that he made three donations to the Salvation Army of (1) a bag of used clothing, (2) a bag of used clothing and a VCR, and (3) four interior doors. Jones stated the value of those donations on his return at $5,000 each. *Id.* ¶ 9. Phuovone's 2012 return reported non-cash donations that added up to $30,250, but he told Jones only that he made donations to various organizations on six occasions consisting of several bags of used clothing, used furniture, and used appliances. Once again, Jones valued those six donations at $5,000 each on the 2012 return. *Id.* ¶ 10.

Bouavone Nguyen attested to similarly unsubstantiated or overstated deductions claimed on his tax return for 2011, which was prepared by defendant Jones, including: (1) $4,000 of education expense credit claimed for expenses incurred by Nguyen, where Nguyen did not tell Jones that he incurred any education expenses that year; (2) $14,000 in cash charitable contributions that Nguyen never told Jones that he made; (3) non-cash charitable donations of some used furniture and a bag of used purses, which Jones valued at $5,000 each; and (4) an employee business expense deduction for 21,320 miles driven in 2011, where Nguyen never told Jones that he incurred any vehicle related business expenses and did not tell her that he drove his car for work purposes. Ex. D, Decl. of Bouavone Nguyen (Pg ID 333-35).

Other taxpayers reported similar patterns of false and unsubstantiated deductions, expenses, donations, and credits stated on their tax returns that were prepared by Pope or Jones. Ex. E, Decl. of Som Boualyvongsane (Pg ID 336-339) (false business expenses, education credits, cash and non-cash charitable donations, and unreimbursed employee expenses for tax years 2010 and 2011); Ex. F, Decl. of Yolanda Agnew (Pg ID 340-45) (false or unsubstantiated business expenses and charitable donations for tax years 2011-2014); Ex. G, Decl. of Jamall Coleman (Pg ID 346-48) (false business expenses and education credits for 2010 and 2011); Ex. H, Decl. of Latisha McCrear (Pg ID 349-51) (false business expenses and education credits for 2011); Ex. I, Decl. of Christina Davis (Pg ID 352-53) (false business expenses and improperly deducted commuting costs for 2011); Ex. J, Decl. of Steve Radosavac (Pg ID 354-55) (false education credits for 2010).

June Foster testified at her deposition that she was employed seasonally as a receptionist at Pope's CDP Tax Services business for a few months each year for three years, from 2012 through 2014. Ex. K, June Foster dep. at 8, 11-12, 30, 39, 46 (Pg ID 359-375). The defendants identified Foster as an "employee" of their tax business in their answers to the government's interrogatories. Foster testified that she was paid $10 per hour for her work, at various times either in cash or by check. Foster dep. at 30. Foster's tax returns were prepared for her each year by either Pope or Jones. For each of those years the returns did not include any income paid to Foster by the tax return business, which was reported to Foster on Form 1099s. *Id.* at 13-14, 30, 39, 40-41, 47-48. Foster testified that Pope and Jones knew that she was paid for her work, and she never told them not to report the income she received from her work in the tax preparation business. *Id.* at 40-41, 47-48.

In their responses to questions propounded for their depositions on written questions, defendants Pope and Jones each asserted their Fifth Amendment privileges against self-incrimination in response to all of the substantive inquiries about their tax preparation activities.

The government filed its complaint in this case on March 31, 2015. The complaint seeks injunctive relief only and pleads two counts for violations of the Internal Revenue Code based on: (1) fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws, I.R.C. §§ 6694, 6695, 7407 (26 U.S.C. §§ 6694, 6695, 7407) (Count I); and (2) aiding, assisting, or advising with respect to the preparation or presentation of a federal tax return knowing, or having reason to believe, that it will result in an understatement of another person's tax liability, I.R.C. §§ 6701(a), 7408 (Count II). In addition to the demands for remedial injunctive relief under sections 7407 and 7408 to halt the specific violations, the complaint also pleads in Count III a demand for permanent injunctive relief under I.R.C. § 7402(a), to enforce the revenue laws by enjoining the defendants from continuing to prepare and file false and fraudulent tax returns.

The government filed its motion for summary judgment after discovery closed in this case. After they requested and received an extension of the time to respond, the defendants timely filed a response, and the government filed a reply. A bench trial is scheduled to begin later next month. However, no trial will be necessary because the defendants have not demonstrated that any of the facts necessary to prove the government's claims are in dispute.

II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Sixth Circuit has explained:

> Both claimants and parties defending against a claim may move for summary judgment "with or without supporting affidavits." Fed. R. Civ. P. 56(a), (b). Such a motion presumes the absence of a genuine issue of material fact for trial. The court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

*Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009).

"The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." 576 F.3d at 558. (citing *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)). "Once that occurs, the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Id.* (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).

"[T]he party opposing the summary judgment motion must do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) (internal quotation marks omitted). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. If the non-moving party, after sufficient opportunity for discovery, is unable to meet his or her burden of proof, summary judgment is clearly proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "Thus, the mere existence of a scintilla of evidence in support of the

[opposing party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." 350 F.3d at 546 (quoting 477 U.S. at 252) (quotations omitted).

When the moving party also bears the ultimate burden of persuasion, the movant's affidavits and other evidence not only must show the absence of a material fact issue, they also must carry that burden. *Vance v. Latimer*, 648 F. Supp. 2d 914, 919 (E.D. Mich. 2009); *see also Resolution Trust Corp. v. Gill*, 960 F.2d 336, 340 (3d Cir. 1992); *Stat-Tech Liquidating Trust v. Fenster*, 981 F. Supp. 1325, 1335 (D. Colo. 1997) (stating that where "the crucial issue is one on which the movant will bear the ultimate burden of proof at trial, summary judgment can be entered only if the movant submits evidentiary materials to establish all of the elements of the claim or defense"). The plaintiff therefore "must sustain that burden as well as demonstrate the absence of a genuine dispute. Thus, it must satisfy both the initial burden of production on the summary judgment motion — by showing that no genuine dispute exists as to any material fact — and the ultimate burden of persuasion on the claim — by showing that it would be entitled to a directed verdict at trial." William W. Schwarzer, et al., The Analysis and Decision of Summary Judgment Motions, 139 F.R.D. 441, 477-78 (1992) (footnotes omitted).

The government makes four main points in support of its contention that it is entitled to a permanent injunction barring the defendants from ever again engaging in the tax preparation business. It says that (1) the uncontested declarations of its revenue agent and clients of the defendants affirmatively show that the defendants repeatedly violated sections 6694 and 6695 by preparing tax returns that included unsubstantiated or inflated deductions for charitable contributions and business expenses, or that claimed tax credits without engaging in any due diligence to

determine if the clients were entitled to those credits; (2) defendant Denise Pope also engaged in other deceptive conduct by issuing Form 1099 statements to report money paid to employees who prepared tax returns for her clients' businesses, when those persons were W-2 employees whose compensation should have been reported as wages subject to income tax and Social Security withholding; (3) the knowing or reckless nature of the defendants' conduct may be inferred from the pattern of large numbers of returns prepared by the defendants that repeatedly state identical amounts for certain categories of deductions, such as $6,000 for all cash charitable contributions and $5,000 for all non-cash contributions, in the absence of any documentation to substantiate those expenses; and (4) the defendants did not disclose during discovery any information to rebut the government's proof that they knowingly prepared and filed false returns, principally because they asserted their rights under the Fifth Amendment and refused to provide any substantive responses to the government's discovery requests.

The defendants argue at some length that the government's evidence is not persuasive proof of their guilt, because (1) despite the allegations of fraudulent filings from 2008 through 2012, the government has not alleged that any fraudulent filings occurred from 2013 through 2017, when the defendants prepared returns for hundreds of customers during those years; (2) clients of the defendants prepared "detailed questionnaires" when they engaged the defendants to prepare their returns, but the government has not submitted any of those questionnaires as attachments to its complaint or motion; (3) none of the taxpayer witnesses were charged by the government with any violations relating to their unpaid or underpaid taxes; (4) the government submitted affidavits from only nine taxpayers out of the thousands of clients served by the defendants and did not include declarations from two of the taxpayers specifically named in the complaint; (5) the government has

not offered any evidence to substantiate that the defendants had any motive to understate tax liabilities, because they were paid the same for their services regardless of the amount of taxes paid or refunds procured by their clients; and (6) all of the taxpayers reviewed and signed their own returns, and none of them ever made any attempt to correct the alleged misstated credits or deductions, or to file any corrected returns stating a higher amount of taxes owed.

The defendants say that they intend to dispute at trial many of the specific factual statements attributed to their clients, and they contend that cross-examination will allow them to illuminate the inconsistent and false assertions made in their clients' declarations. They insist that it would be inappropriate for the Court to grant permanent injunctive relief based solely on "canned" affidavits, without any opportunity to observe the demeanor and weigh the credibility of each witness. The defendants also contend that permanent injunctive relief is extreme and not warranted under the circumstances, where there are no allegations that the defendants prepared any fraudulent returns for a period of several years following the preparation of the 2008 to 2012 returns that were scrutinized by the government.

The defendants have not submitted any "evidence" — affidavits, depositions, or other factual material — in support of their response. They did submit a handful of documents, apparently culled from discovery produced by the government, which included (1) contact information forms completed by Jason Poindexter, Jamall Coleman, and Yolanda Agnew in the course of securing tax preparation services from the defendants, Defs.' Resp., Exs. A, B, C, Contact Forms dated 2010, 2011, 2014 (Pg ID 556, 563, 569); (2) tax forms and certifications purportedly signed by Poindexter and Agnew indicating that they had reviewed their tax forms and the associated schedules and that the statements made therein were true, Exs. A, C, Tax Forms and Consent Forms dated Feb. 3, 2011

(Pg ID 557-61); Ex. C, Consent Form dated Feb. 25, 2014; (3) receipts for charitable donations which the defendants contend were presented by affiant To Phuovone and his spouse Mannyphan Phuovone, which memorialized donations to the Salvation Army of two bags containing unspecified materials, and other unidentified items, Ex. B, Donation Receipts dated variously from 2012 (Pg ID 566-67); and (4) a typewritten document with some handwritten notes purporting to summarize various business and professional expenses claimed on Agnew's return, with no apparent attribution as to who prepared the document or the basis of the amounts stated, Ex. C (Pg ID 571). None of those exhibits were authenticated or accompanied by declarations that would support their admissibility at trial.

The defendants did not point to any other evidence or testimony in the record in support of their response, and their briefing is largely devoid of any citations to support the numerous factual assertions that they rely upon in questioning the credibility of the government's declarants.

A.

As a general rule, a party seeking a permanent injunction must offer evidence on each of four factors that the Court must balance on its equitable scale. *Michigan Dep't of Envtl. Quality v. City of Flint*, --- F. Supp. 3d ---, No. 17-12107, 2017 WL 4641897, at *11 (E.D. Mich. Oct. 17, 2017) (listing (1) proof of irreparable injury; (2) inadequacy of remedies available at law; (3) a favorable balance of hardships between the plaintiff and the defendant; and (4) that an injunction is consistent with the public interest) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)). However, "[s]ection 7407 [of the Internal Revenue Code] authorizes a court to enjoin a tax return preparer from acting as a tax return preparer," where "'the court finds that a tax return preparer has continually or repeatedly engaged in any conduct described in subparagraphs (A) through (D) of

[that] subsection and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title.'" *United States v. ITS Financial, LLC*, 592 F. App'x 387, 393 & n.4 (6th Cir. 2014) (quoting I.R.C. § 7407(b)(2)). Prohibited conduct that may warrant injunctive relief includes, "any conduct subject to penalty under section 6694 or 6695" and "any other fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws." I.R.C. § 7407(b)(1)(A), (D). "[W]here a tax-return preparer prepares returns that understate a taxpayer's liability, the preparer is subject to penalty if the understatement was made willfully or in 'reckless or intentional disregard of rules or regulations.'" *United States v. Elsass*, 769 F.3d 390, 393 (6th Cir. 2014) (quoting I.R.C. § 6694(b)). Section 6695 of the Code imposes penalties on any tax preparer "who fails to comply with due diligence requirements imposed by the Secretary by regulations with respect to determining eligibility for" the American Opportunity Tax Credit and Earned Income Credit. I.R.C. § 6695(g).

Section 7407 "permits [this so-called] 'business death penalty' in cases where enjoining specific conduct would not be sufficient to prevent future interference with the revenue laws." *ITS Financial, LLC*, 592 F. App'x at 397.

There is no disputed question of material fact on whether the government is entitled to an injunction prohibiting the defendants from engaging in the business of tax preparation. The declarations submitted by the government have not been rebutted by any evidence identified by the defendants. The government amply has established that the defendants at least "repeatedly" engaged in a practice of preparing false tax returns that show a distinct pattern of unsubstantiated claims for deductions, credits, and expenses that resulted in understatements of their clients' tax liabilities over the course of several years.

The defendants' knowledge of the false statements made on their clients' returns, or at the least their reckless disregard for the truth or falsity of those statements, may be inferred from (1) the numerous attestations of their clients that they never gave the defendants any documents or information to substantiate the specific amounts involved; (2) the evident extreme disparity between the nature of the information given and the resulting deductions claimed, such as charitable donations of several bags of used clothes valued by the defendants at $5,000 each; (3) the plainly unallowable nature of certain deductions, such as purported mileage expenses for business purposes based on their clients' expenses for commuting from their homes back and forth to work, *see* IRS Tax Topic 514, Employee Business Expenses, https://www.irs.gov/ taxtopics/tc500/tc514 ("Although commuting costs aren't deductible, some local transportation expenses are. Deductible local transportation expenses include the ordinary and necessary expenses of going from one workplace (away from the residence) to another."); (4) the fact that the defendants repeatedly documented credits or expenses for education or business activities when their clients told them they did not own or operate a business and had not incurred any education expenses for the year; and (5) the readily apparent patterns among false deductions and credits, such as valuing all non-cash charitable contributions at $5,000 each, regardless of the nominal value of the items donated.

The defendants have not pointed to any information in the record to rebut the declarations supplied by the government's case agent and the defendants' clients in which they attested that a pervasive pattern of false deductions, credits, and expenses was identified in 85 of the 87 returns examined by the IRS. That pattern was substantiated by testimony about specific false or inflated items attributed to nine individual taxpayers. The defendants point to a handful of documents included with their response for the proposition that the taxpayers supplied "information" to them

about their income, expenses, and activities, but none of those documents, save one, contain any notations relating to any amounts at issue on the individual tax returns. It appears to be undisputed that the taxpayers signed consent forms and the signature pages of their returns, but the defendants have offered no evidence to rebut the declarants' assertions that they never reviewed the substance of their returns before signing them, and that they never supplied any information or documents to substantiate numerous false or inflated deductions and credits stated on those forms.

Moreover, the documents submitted have not been authenticated, and there is no showing that they could be received in evidence at trial. It is true that the documents attached to the defendants' motion response "need not themselves be in a form that is admissible at trial." *Alexander*, 576 F.3d at 558 (citing Celotex, 477 U.S. at 324). Nevertheless, "the party opposing summary judgment must show that she can make good on the promise of the pleadings by laying out enough evidence that *will be* admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary." *Ibid.* (emphasis added). The "'evidence submitted in opposition to a motion for summary judgment must be admissible.'" *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) (quoting *United States Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir. 1997)). "[U]nauthenticated documents do not meet the requirements of Rule 56(e)." *Alexander*, 576 F.3d at 558-59 (citing cases).

As to declarant Agnew, the defendants submitted an unauthenticated document, which, they contend, memorialized notes made by Agnew relating to her tax return, including, among other things, expenses for a cell phone — $1,200, car repairs — $700, and a notation that reads "miles — 12,654." However, those vague notations do not contradict Agnew's sworn declaration in which she attested that: (1) she did not know that any of the amounts reported as business expenses on her

tax returns for 2012 through 2014 were stated on those forms until she was contacted by the IRS, Agnew decl. ¶ 8 (Pg ID 342); (2) she told Pope that she paid "about $100 per month for her cell phone" in 2014, but she did not tell Pope that the phone was used for her business, and her business use was "less than 5% of [her] total use," *id.* ¶ 9; (3) she told Pope that she drove 12,654 miles total in her car in 2014, but, unbeknownst to Agnew, Pope included that entire amount as business related mileage, even though Pope never asked how many miles were driven for business, *id.* ¶ 10; and (4) she never told Pope that she incurred $700 for car repairs for business use of her car in 2014, and the expenses that she paid for car repairs that year were for general repairs to her vehicle incurred as a result of her personal use, *id.* ¶ 11.

The defendants insist that they will be able to substantiate their defense by cross-examining their former clients, thereby establishing their lack of credibility. However, "the 'prospect of challenging a witness['s] credibility is not alone enough to avoid summary judgment.'" *Goodwin v. City of Painesville*, 781 F.3d 314, 323 (6th Cir. 2015) (quoting *Dugan v. Smerwick Sewerage Co.*, 142 F.3d 398, 406 (7th Cir. 1998)). Instead, a genuine fact question does not emerge unless the defendants "'offer[] specific facts that call into question the credibility of the movant's witnesses.'" *Ibid.* (quoting *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013)); *see also Dugan v. Smerwick Sewerage Co.*, 142 F.3d 398, 406 (7th Cir. 1998) ("At best, . . . the conflicts in the stories would be fodder for impeachment if this case went to trial. But the prospect of challenging a witness' credibility is not alone enough to avoid summary judgment.") (citing *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 411 (7th Cir. 1997)). The defendants here have not offered any evidence that might call into question the credibility of any of their former clients who submitted declarations.

Finally, it is evident from the record of these proceedings that a narrow injunction prohibiting the defendants merely from repeating the specific violations alleged would not suffice to deter them from their unlawful conduct, since they already have displayed a willingness to flout the Court's injunctive order barring them from engaging in the business of tax preparation while this case was pending. As the Court noted when it previously held the defendants in contempt:

> On January 19, 2017, the Court held a hearing at which the individual defendants personally appeared and testified. During their testimony, defendants Denise Pope and Janise Jones each admitted that they had prepared and transmitted tax returns for other persons after the Court issued the injunction commanding them to cease engaging in the business of tax preparation. They also conceded that they had actual knowledge of the Court's order and had read it. The defendants asserted that they had some confusion about the effective date of the provision barring them from engaging in the business of tax preparation, but they did not dispute that they knew the order was issued on September 21, 2016, and they did not contend that they made any effort to seek clarification from the Court of any terms of the order.

Order Holding Defs. in Contempt [dkt. #43] at 3-4 (Pg ID 234-35). Section 7407 specifically authorizes the Court to enjoin the defendants from acting as tax preparers based on the showing made by the government here, "where enjoining specific conduct would not be sufficient to prevent future interference with the revenue laws." *ITS Financial*, 592 F. App'x at 393 & n.4, 397 (quoting I.R.C. § 7407(b)(2)). In this case, the pervasive pattern of conduct over four years which prompted this litigation, and the defendants' record of noncompliance with the Court's orders during the pendency of this matter, demonstrate that a narrowly tailored order would be unlikely to prevent the defendants from engaging in similar violations of the Tax Code.

B.

Count II of the complaint is based on section 6701(a) and 7408 of the Internal Revenue Code. IRC section 6701(a) "provides for imposing penalties against '[any person] (1) who aids or assists in, procures, or advises with respect to, the preparation or presentation of any portion of a

-16-

return, affidavit, claim, or other document, (2) who knows (or has reason to believe) that such portion will be used in connection with any material matter arising under the internal revenue laws, and (3) who knows that such portion (if so used) would result in an understatement of the liability for tax of another person.'" *ITS Financial*, 592 F. App'x at 390 n.1 (quoting I.R.C. § 6701(a)). "The term 'person' is defined to 'include an individual, a trust, estate, partnership, association, company or corporation.'" *Ibid.* (quoting I.R.C. § 7701(a)(1)).

Section 7408 of the Code states that "'[i]n any action under subsection (a), if the court finds (1) that the person has engaged in any specified conduct, and (2) that injunctive relief is appropriate to prevent recurrence of such conduct, the court may enjoin such person from engaging in such conduct or in any other activity subject to penalty under this title.'" *Ibid.* (quoting I.R.C. § 7408(a)). "'Specified conduct' is defined as 'any action, or failure to take action' subject to penalty under section 6701, among others." *Ibid.* (quoting I.R.C. § 7408(c)).

For the same reasons discussed above, the government's uncontradicted evidence in the record establishes that the defendants aided, assisted, or advised as many as 85 of their clients, including the nine taxpayers and one employee of the tax preparation business whose declarations were submitted by the government, in the preparation or presentation of numerous tax returns, while knowing or having reason to believe that statements made in those returns would result in an understatement of the liability for tax of those persons. *ITS Financial*, 592 F. App'x at 390 n.1 (quoting I.R.C. § 6701(a)). The government therefore has shown, based on the uncontested record evidence, that it is entitled to injunctive relief barring the defendants from engaging in such conduct in the future, I.R.C. § 7408(a).

C.

Count III is based on Internal Revenue Code section 7402(a). "The plain text of [that Code section] provides a broad grant of authority to enter injunctions 'as may be necessary or appropriate for the enforcement of the internal revenue laws . . . in addition to and not exclusive of any and all other remedies.'" *ITS Financial*, 592 F. App'x at 394 (quoting I.R.C. § 7402(a)). "Numerous courts have commented on the statute's expansive scope." *Ibid.* (collecting cases). "Section 7402(a) is not limited to enjoining specific conduct proven to violate tax laws." *Id.* at 395. Federal courts "have invoked § 7402(a) to enter an injunction even where there was no violation of the internal revenue laws." *Ibid.* Thus, injunctive relief independently may be authorized under the general enforcement power granted by section 7402(a), whether or not the Court finds that an injunction to prohibit specific fraudulent or deceptive conduct is warranted under sections 7407 or 7408. *Id.* at 396-97 (collecting cases).

The Sixth Circuit has held, with respect to injunctive relief under both sections 7408 and 7402(a), that "because the statute expressly authorizes the issuance of an injunction, the traditional requirements for equitable relief need not be satisfied." *Id.* at 400. To determine whether injunctive relief under section 7402(a) is "necessary or appropriate," the Court must ask "whether [the defendants are] 'reasonably likely to violate the federal tax laws again.'" *Ibid.* "To predict the likelihood of future violations, . . . a court must assess the totality of the circumstances surrounding the defendant and his violations by considering such factors as (1) the gravity of harm caused by the offense; (2) the extent of the defendant's participation and the defendant's degree of scienter; (3) the isolated or recurrent nature of the infraction and the likelihood that the defendant's customary business activities might again involve the defendant in such transaction; (4) the defendant's

recognition of his or her own culpability; and (5) the sincerity of the defendant's assurances against future violations." *Ibid.* (quotations and citations omitted).

Under these factors, the government has shown that it is entitled to an injunction under the general enforcement authority vested in the Court by section 7402(a). The gravity of the harm caused by the defendants' conduct in this case is considerable, amounting to more than $460,000 in understated tax liabilities based on the sample of 85 returns out of 87 examined by the government that contained false claims. The defendants have not pointed to any information to rebut the allegations and declaration testimony, which shows that they extensively and directly were involved in preparing the fraudulent tax returns that have been identified, and they have pointed to nothing to contradict the inescapable conclusion that they were well aware of the false statements made on those returns.

The violations here were not isolated; they were pervasive and recurrent, occurring in nearly all of the returns examined by the government, and on every one of the returns prepared for the nine clients who testified for the government. Those false statements were made on returns spanning tax years from 2008 to 2014, in some cases on returns for the same client over several years. The risk that the defendants' involvement in any tax preparation business frequently would subject them to temptations to return to similar conduct is high, and readily apparent. And the defendants have, to date, offered no indication of any readiness to accept any responsibility for their unlawful conduct. Moreover, any assurances that they would not engage in future similar conduct — although, as yet, they have offered none — would ring hollow in the face of their demonstrated willingness to defy the Court's prohibition on engaging in the business of preparing tax returns for hire even during the pendency of this litigation.

III.

The undisputed facts here demonstrate that the defendants have engaged in frequent and repeated violations of Internal Revenue Code sections 6694, 6695, and 6701(a). The government has shown, by the undisputed facts in the record, that a permanent injunction barring the defendants from ever engaging in the business of federal tax return preparation and filing is warranted.

Accordingly, it is **ORDERED** that the government's motion for summary judgment [dkt. #53] is **GRANTED.** A separate judgment will enter.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: November 30, 2017

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 30, 2017.

s/Susan Pinkowski  
SUSAN PINKOWSKI